## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**TONYA MITCHELL, on behalf of**                                    **PLAINTIFF**
**K.C.M, a Minor**

**V.**                            **NO. 4:15CV00322-BSM-JTR**

**CAROLYN W. COLVIN,**                                    **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Tonya Mitchell, applied for Supplemental Security Income on behalf of her minor child, K.C.M. ("KCM"), alleging a disability onset date of August 30, 2010.  (Tr. at 100).  After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application.  (Tr. at 32).  The Appeals Council denied her request for review.  (Tr. at 1).  The ALJ's decision now stands as the final decision of the Commissioner, and Mitchell has requested judicial review.

For the reasons stated below, this Court reverses the ALJ's decision and remands for further review.

## II.  The Commissioner's Decision:

For minor child disability cases, an ALJ must follow a three-step sequential evaluation.  Under this framework, the ALJ is required to first determine if the Plaintiff is engaging in substantial gainful activity.  20 C.F.R. § 416.924.  Next, the ALJ must decide if the impairment, or combination of impairments, is severe.  *Id*.  Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment.  *Id*.  A minor has met a listing if her impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926.  The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  *Id*.  The ALJ in this case decided that KCM was not engaged in substantial gainful activity.  (Tr. at 19).  He next determined that she had the following severe impairments: narcolepsy, oppositional defiant disorder, depressive disorder, and parent/child problems.  *Id*.  He concluded that KCM was not disabled because KCM did not have severe impairments that met or equaled a listing (she did not have two marked limitations or one extreme limitation in the six functional domains).  (Tr. at 32).

## III.  Discussion:

2

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.  Mitchell's Arguments on Appeal

Mitchell argues that: (1) the ALJ did not give proper weight to KCM's Global Assessment of Functioning ("GAF") scores; and (2) the ALJ erred in finding that KCM did not have a marked limitation in health and physical well-being and caring for herself.

KCM suffered mental and emotional distress upon the divorce of her mother from her step-father, who had raised her since the age of six months. (Tr. at 21). She was admitted to Pinnacle Pointe Hospital at Arkansas Children's Hospital on September 13, 2012 for suicidal ideation and violent outbursts with aggression towards her mother. *Id.* She was given a GAF score of 20 and diagnosed with depressive disorder with psychosis and oppositional defiant disorder. (Tr. at 22). After improvement, the hospital discharged her on September 20, 2012. *Id*.

On October 16, 2012, KCM was readmitted to Pinnacle Pointe Hospital with a GAF of 20 and a diagnosis of major depressive disorder. *Id.* She was experiencing suicidal ideation and psychosis, and reported hearing voices for three weeks telling her to kill herself. *Id*. Upon discharge on October 26, 2012, her GAF was 35. *Id.*

From November 2012 to March 2013, KCM attended individual psychotherapy at Centers for Youth and Families. *Id.* Her GAF at her first visit was 20. Id. She was diagnosed with major depressive disorder, single episode, severe with psychotic features, oppositional defiant disorder, and parent/child relational problems. *Id*. Upon release from the clinic her GAF was 35.

KCM had a mental diagnostic evaluation on August 9, 2013, and was assigned a GAF of 50, which was her highest recorded GAF score. (Tr. at 779). Dr. Nancy Toombs noted that KCM did not know how to resolve conflicts with peers without becoming angry and using aggression. (Tr. at 778). Dr. Toombs spent over three hours with KCM and her mother, and she noted that this was a "very complicated case" and felt she had barely

4

scratched the surface in regard to the claimant's problems that affected her family.  *Id.*

GAF scores do not directly correlate to the severity requirements of mental disorders listings.  *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).  However, they should be considered along with other evidence in determining a claimant's RFC.  *Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009); *see Greene v. Colvin*, No. 3:15-CV-00050, 2016 U.S. Dist. LEXIS 100210 (E.D. Ark. Aug. 1, 2016) (indicating that an ALJ must consider a claimant's longitudinal GAF score history).  The introductory paragraph of the GAF scale instructs the examiner to "consider psychological, social, and occupational functioning on a hypothetical continuum of mental illness."  DSM-IV-TR at 34.  GAF scores in the 21-30 range indicate "behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas."  (Tr. 26).

The ALJ used boilerplate language to dismiss the GAF scores in this case.  He reasoned that the GAF scores only capture "a picture in time and do not necessarily correlate with disability."  (Tr. at 26).  KCM had extensive in-patient treatment and acute hospitalizations over the course of a year, with GAF scores in the 20's to 30's over that time period.  That does not indicate only a "picture in time" but rather a longitudinal record of serious functional limitations.  The ALJ erred in dismissing GAF scores when the record in full, including evidence from mental health providers, substantiates KCM's low scores.  An ALJ is "not free to ignore medical evidence" and the GAF scores deserved more weight.  *Greene v. Colvin*, *supra,* at 5.

Next, Mitchell contends that KCM had a marked limitation in the functional domain of health and physical well-being. A marked limitation in that area, along with the marked limitation the ALJ assigned for interacting and relating with others, would result in a finding of disability.

In evaluating the functional domain of health and physical well-being, the ALJ only considered KCM's physical impairment of narcolepsy, which was correctly deemed a severe impairment. KCM was diagnosed with narcolepsy in 2010 and experienced excessive sleepiness and fatigue. (Tr. 20). She routinely fell asleep during classes later in the day, and received an F in Science due to falling asleep regularly. Her teachers reprimanded her for falling asleep, but then accommodated her condition by allowing her to take naps in class, which is certainly an extreme solution in a school setting. (Tr. at 20, 32). Allowing naps in class does not provide for improved mental or social functioning.

In 2011, a sleep study for KCM revealed the presence of alleles, and she was diagnosed with idiopathic hypersomnia syndrome. (Tr. at 21). KCM's mother reported that in spite of medications, she regularly struggled with staying awake. KCM continued to have trouble in school; she was suspended for being rude and disrespectful to authority. (Tr. at 23). She had a hard time following school rules and was disruptive in the classroom. *Id*. The ALJ noted that she had not been arrested, as if this was the only result which would validate her severe impairment. *Id*. The ALJ did not find the evidence regarding the sleep and discipline problems to support the severity of limitations claimed by KCM, although her difficulty in school and poor response to medications do support a marked limitation.

6

When considering whether a limitation is marked, an ALJ must consider functional limitations, "including their interactive and cumulative effects" as well as "signs, symptoms, and laboratory findings [and] descriptions from people who know [the plaintiff]." 20 C.F.R. § 416.926a(e).  Taking narcolepsy alone, the Court finds support for a marked limitation in health and physical well-being.  However, when coupled with KCM's extensive mental and adaptive dysfunction, which the ALJ did not address in his evaluation of the health and physical well-being domain, a marked limitation would be required. The assignment of marked limitations in both (a) interacting and relating with others; and (b) health and physical well-being, results in a finding of disability.

## IV.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.  The ALJ erred by not giving proper weight to KCM's GAF scores, and by assigning "no limitations" in the functional domain of health and physical well-being. The decision is hereby reversed and the case remanded with instructions for further review and proper consideration of KCM's GAF scores and a reevaluation of her domains of functioning to determine if she has met a listing.

IT IS SO ORDERED this 16th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE